Jack R. Nelson (SBN 111863)
Email: jnelson@reedsmith.com
Keith D. Yandell (SBN 233416)
Email: kyandell@reedsmith.com
REED SMITH LLP
1999 Harrison Street, Suite 2400
Oakland, CA 94612-3572
**Mailing Address:**
P.O. Box 2084
Oakland, CA 94604-2084
Telephone: +1 510 763 2000
Facsimile: +1 510 273 8832

Attorneys for Defendant
Wachovia Mortgage, FSB (sued incorrectly as
"Wachovia Mortgage Corporation")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALO PENA TORRES,<br><br>       Plaintiff,<br><br>vs.<br><br>WACHOVIA MORTGAGE CORPORATION; COVERDALE VENTURES, INC.; ANUSHKA M. COVERDALE; MAGNOLIA GUERRERO; and DOES ONE through FORTY,<br><br>       Defendants. | No.: C08-01775 WHA<br><br>(Formerly Sonoma County Superior Court Case No. SCV 242546)<br><br>**DEFENDANT WACHOVIA MORTGAGE, FSB'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: July 3, 2008<br>Time: 8:00 a.m.<br>Courtroom : 9, 19th Floor, San Francisco<br><br>The Honorable William Alsup<br><br>Compl. Filed: March 14, 2008 |

**Table of Contents**

**Page**

I    FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT ........................................1

II .    LEGAL ARGUMENT ..................................................................................................4

     A.    Applicable Legal Standards ...............................................................................4

     B.    Plaintiff Fails To State A RESPA Cause Of Action ..........................................5

         1.    World's Alleged Conduct Does Not Violate RESPA ............................5

         2.    Plaintiff Cannot Maintain A Private Cause Of Action Under RESPA ........................................................................................7

     C.    Plaintiff Cannot State A Claim For Relief Under Civil Code Section 1632 .................8

         1.    Plaintiff Does Not State A Claim For Relief Under Section 1632 ....................8

         2.    HOLA Preempts Plaintiff's Section 1632 Claim..............................................9

III .    CONCLUSION ........................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*America Bankers Association v. Lockyer*,
   239 F. Supp 2d 1000 (E.D. Cal. 2003) ...............................................................................11

*Balisteri v. Pacifica Police Department*,
   901 F. 2d 696 (9th Cir. 1988) ............................................................................................4

*Bjustrom v. Trust One Mortgage Corp.*,
   322 F.3d 1201 (9th Cir. 2003) .......................................................................................6, 7

*Carter v. Welles Bower Realty, Inc.*,
   493 F. Supp. 2d 921 (N.D. Ohio, 2007) ..............................................................................7

*Fidelity Federal Sav. & Loan Association v. De La Cuesta*,
   458 U.S. 141 (1982)............................................................................................................9

*Griffin Industrial v. Irvin*,
   2007 U.S. App. LEXIS 19828 (11th Cir. August 21, 2007)................................................4

*Haug v. Bank of America, N.A.*,
   317 F.3d 832 (8th Cir. 2003) ..............................................................................................7

*Lopez v. World Savings and Loan Association*,
   105 Cal. App. 4th 729 (2003) ..............................................................................9, 11, 12

*Mullinax v. Radian Guaranty*,
   311 F. Supp. 2d 474 (M.D. N.C. 2004) ..............................................................................8

*Rose v. Chase Bank USA, N.A.*,
   2008 U.S. App. LEXIS 1240 (January 23, 2008, 9th Cir.)................................................11

*Rosenberg v. Washington Mutual Bank, F.A.*,
   849 A.2d 566 (N.J. Super. 2004) ......................................................................................10

*Silvas v. ETrade Mortgage Corporation*,
   421 F. Supp. 2d 1315 (S.D. Cal. 2006), *affirmed*, *Silvas v. ETrade Mortg. Corp.*, 2008
   U.S. App. LEXIS 1944 (9th Cir. January 30, 2008)..............................................4, 10, 12

*Wisconsin League of Financial Inst. v. Galecki*,
   707 F. supp. 401 (W.D. Wisc. 1989) ................................................................................11

*Wuxi Multimedia, Ltd. v. Koninklijke Phillips Electrics, N.V.*,
   2006 U.S. Dist. LEXIS 9160 (D. Cal. 2006) ......................................................................4

*Wyatt v. Union Mortgage Co.*,
   24 Cal. 3d 773 (1979) .........................................................................................................8

## STATUTES

12 U.S.C. § 2607(a) ....................................................................................................................7

**Memorandum Of Points And Authorities In Support Of Motion For Judgment On The Pleadings**

12 U.S.C. § 2607(b) ............................................................................................................................7

12 U.S.C. § 2607(c)(2) .......................................................................................................................6

12 U.S.C. § 2612(a) ...........................................................................................................................7

12 U.S.C. § 2617(b) ...........................................................................................................................5

15 U.S.C. § 1601 .............................................................................................................................10

Cal. Bus. Prof. Code § 17200 .........................................................................................................11

Cal. Bus. Prof. Code § 17500 .........................................................................................................10

Cal. Civ. Code § 1632 ..................................................................................................................2, 8

Cal. Civ. Code § 1632(b) .................................................................................................................8

Cal. Civ. Code §1632(a)(3) .............................................................................................................3

Cal. Civ. Code. §1632(e) ...............................................................................................................10

Cal. Civ. Code. §1632(e)(1) ..........................................................................................................10

Home Owners' Loan Act of 1933, 48 Stat. 129, 12 U.S.C. Section 1461 ..............................................3

Real Estate Settlement Procedures Act, 12 U.S.C. Section 2602 .......................................................2

**RULES AND REGULATIONS**

12 C.F.R. § 560.2 .........................................................................................................................3, 9,

12 C.F.R. §560.2(b)(9) ...................................................................................................................10

24 C.F.R. 3500.4(b) .........................................................................................................................5

Real Estate Settlement Procedures Act (RESPA) Statement of Policy, 1999-1, 64 FR 10080 .............5

**Memorandum Of Points And Authorities In Support Of Motion For Judgment On The Pleadings**

# I    FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

In 2005, Plaintiff Gonzalo Pena Torres ("Plaintiff") hired defendant Magnolia Guerrero ("Guerrero") as his real estate agent to find investment property for Plaintiff to buy. Complaint ("Cmplt."), ¶10. Guerrero worked for defendant Coverdale Ventures, Inc. (Coverdale Ventures and its owner, defendant Anushka Coverdale, are referred to hereinafter as "Coverdale"). Guerrero advised Plaintiff to buy property that Guerrero was listing, but Plaintiff did not have enough cash for the down-payment. *Id.* at ¶11. Guerrero advised Plaintiff that he could obtain a cash-out refinance loan on his home with low initial payments that would adjust slowly upward over the first 5 years. *Id.* at ¶12. Plaintiff agreed to follow Guerrero's recommended strategy for buying the investment property. *Id.* at ¶13. Plaintiff alleges that these discussions with Guerrero took place in Spanish. *Id.*

Plaintiff further alleges that, <u>after</u> Plaintiff agreed to Guerrero's advice, Guerrero "solicited a refinance from [defendant] World Savings" and, in doing so, fraudulently overstated Guerrero's income and assets to World.[1] Cmplt. at ¶14. Plaintiff admits what the terms of the World loan were, and admits further that the World loan provided that his monthly payments would rise over time [*id.* at ¶16], but he alleges that he was never told, orally, <u>how much</u> his loan monthly payments could rise. *Id.* at ¶18.[2]

Notably, Plaintiff does <u>not</u> allege that he discussed the World loan in Spanish with

---

[1] World Savings Bank, FSB changed its name as of December, 2007 to "Wachovia Mortgage, FSB," and has erroneously been sued here as "Wachovia Mortgage Corporation." World/Wachovia is a federally chartered savings bank and operates under the supervision of the federal Office of Thrift Supervision ("OTS"). <u>See</u> Wachovia Mortgage FSB's Request for Judicial Notice, Ex. A. For ease of reference, Wachovia Mortgage FSB is referred to herein as "World," the name used in the transaction at issue.

[2] Because Plaintiff admits that his loan documentation explained the terms of his loan, the issue of whether those terms were also explained orally to Plaintiff is legally irrelevant to any claim he seeks to make. Moreover, because he admits that no one orally attempted to explain the loan's payment schedule to him, Plaintiff cannot contend that he relied on any such discussion when he agreed to enter into the loan contract with World.

1  Guerrero, much less that he or Guerrero ever communicated with World in Spanish.[3]

3  Now, some <u>2-3 years</u> after taking out his World loan, Plaintiff alleges that his
4  payments have risen each year (a fact disclosed in writing and numerically in the documents and
5  disclosures that World provided to Plaintiff), that they will continue to rise, and that soon he will be
6  unable to afford them.  Cmplt. at ¶21.  Plaintiff is therefore belatedly trying to get out of his loan
7  obligations, first by suing Guerrero and Coverdale for fraud and, second, by trying to attack World.
8  Specifically, Plaintiff claims that he is entitled to rescind his World loan under California Civil Code
9  Section 1632.

11  Plaintiff also points out that World paid Guerrero and Coverdale (jointly) a broker's
12  commission on Plaintiff's loan.  Plaintiff tries to invoke the federal Real Estate Settlement
13  Procedures Act, 12 U.S.C. Section 2602 *et seq*. ("RESPA").  Cmplt. at ¶42. in attacking that
14  payment.  Plaintiff first contends that the agency services that Plaintiff received from Guerrero and
15  Coverdale were "detrimental" to Plaintiff and thus that Plaintiff in fact received "no services" from
16  Guerrero or Coverdale.  Plaintiff then turns from apples to oranges and argues that because <u>he</u>
17  received nothing of value from Guerrero or Coverdale, the commission that <u>World</u> paid to Guerrero
18  and Coverdale was an artifice.  *Id*. at ¶43.  Based on this entirely illogical leap, Plaintiff claims that
19  World's payment to Guerrero and Coverdale was a prohibited "kickback" under RESPA because
20  World did not pay a commission to Guerrero in exchange for anything of value.  *Id*. at ¶44.

22  Plaintiff's theories of recovery against World are each legally erroneous and factually
23  unsupportable.  Plaintiff's Section 1632 cause of action fails because he does not and cannot state
24  facts sufficient to satisfy the statute's requirements and because the federal law preempts the statute

---

[3] Plaintiff further alleges that, after he closed on his loan from World, he bought the income property that Guerrero was listing and that, to do so, Guerrero arranged for him to obtain yet another loan, again calling for initially low but then rising payments over time, this time from Downey Savings, and by – again - falsely overstating Plaintiff's income and assets.  Cmplt. at ¶20.

2
**Memorandum Of Points And Authorities In Support Of Motion For Judgment On The Pleadings**

as Plaintiff seeks to apply it.  His complaint provides no factual basis for the claim because it lacks an allegation that anyone, much less World, ever "negotiate[d] primarily" with Plaintiff in Spanish over the loan.  Cal. Civ. Code §1632(a)(3).  Also, while Plaintiff alleges that Guerrero and Coverdale acted as "the agent for World" and "were paid a commission by [World] for their services," [Cmplt., ¶19], Plaintiff does not claim that the services Guerrero provided included negotiating the terms of the loan.  *Id*. at. ¶ 42.  In turn, Plaintiff's Complaint does not and cannot assert allegations sufficient to satisfy Section 1632's fundamental prerequisite; *to wit*, that World negotiated with Plaintiff in Spanish.  Finally, even if a claim could ever be constructed factually here to fit Section 1632 (and it cannot), it would be of no use to Plaintiff because as a federal savings bank all of World's lending activities, including those relating to the documentation of Plaintiff's loan, were and are governed exclusively by the Home Owners' Loan Act of 1933, 48 Stat. 129, as amended, 12 U.S.C. Section 1461, *et seq.* ("HOLA"), and regulations promulgated under HOLA by the federal Office of Thrift Supervision ("OTS") and found at 12 C.F.R. Section 560.2.  Because on its face Section 1632 attempts to regulate the disclosures of federally chartered savings associations, HOLA preempts that statute as Plaintiff seeks to apply it.

Plaintiff fares no better with his argument that World violated RESPA.  First, RESPA does not provide for a private right of action in situations where, as here, a plaintiff has suffered no injury in fact.  Here, Plaintiff readily admits that World, not Plaintiff, paid the broker fee at issue.  Cmplt. at ¶¶15, 19 and 42.  Similarly, Plaintiff does not allege that he overpaid for Guerrero's services or the World loan.  Thus, Plaintiff does not and cannot allege that <u>he</u> suffered the harm required to show standing under RESPA.

Second, Plaintiff also fails to plead facts sufficient to support a RESPA claim.  He does not allege that World and Guerrero/Coverfield had a fee sharing agreement or that World split with Guerrero/Coverfield any fees that Plaintiff paid to World.  Plaintiff admits instead that World paid Guerrero/Coverdale "outside of closing" [Cmplt. at 15], meaning that no fee paid to World was the source of the commission that World paid to Guerrero/Coverdale.  Moreover, the factual

3

**Memorandum Of Points And Authorities In Support Of Motion For Judgment On The Pleadings**

foundation of Plaintiff's RESPA claim fails because he argues that a fee paid <u>by</u> World, for services <u>to</u> World (preparation and submission of a loan application), lacked "value" <u>to Plaintiff</u>.  Even if true, such an allegation would not give rise to a RESPA claim for relief because RESPA does not require that the benefits that a broker creates for a lender in exchange for a commission (i.e., bringing to the lender the broker's customer - a qualified loan applicant) inure to the borrower.  Indeed, RESPA contemplates, and caselaw confirms, that no RESPA cause of action exists when a lender benefits from a mortgage broker's delivery of an application to the lender.  So long as the fees the broker receives from the lender for the delivery of that application are commensurate with the benefits conferred on the lender, there can be no issue under RESPA.[4]

## II.     LEGAL ARGUMENT

### A.     Applicable Legal Standards

Dismissal under Rule 12(c) is proper when a complaint either exhibits a "lack of a cognizable legal theory or the absence of sufficient facts under a cognizable legal theory."  <u>Balisteri v. Pacifica Police Dept.</u>, 901 F. 2d 696, 699 (9th Cir. 1988); *see also*, <u>Silvas v. E*Trade Mortgage Corporation</u>, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006), *affirmed*, <u>Silvas v. E*Trade Mortg. Corp.</u>, 2008 U.S. App. LEXIS 1944 (9th Cir. January 30, 2008).  For the purposes of ruling on a motion for judgment on the pleadings, material facts alleged in a complaint are of course treated as true, [*id.*], but where a complaint contains inconsistent allegations, the Court need not accept those allegations.  <u>Wuxi Multimedia, Ltd. v. Koninklijke Phillips Elecs., N.V.</u>, 2006 U.S. Dist. Lexis 9160, 26-27 (D. Cal. 2006).  Further, a court "need not ignore specific factual details of the pleading in favor of general or conclusory allegations."  <u>Griffin Indus. v. Irvin</u>, 2007 U.S. App. LEXIS 19828 (11th Cir. August 21, 2007).

---

[4] In truth, with respect to World, both Guerrero and Coverdale were, and knew they were, independent contractors. Neither ever had any agency relationship with World, a fact that World can prove ultimately outside the pleadings.

**B.      Plaintiff Fails To State A RESPA Cause Of Action**

Section 19(b) of RESPA protects lenders from liability for acts done in good faith conformity with the law.

> No provision of this chapter or the laws of any State imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation or interpretation thereof by the Secretary [of HUD] or the Attorney General, notwithstanding that after such act or omission has occurred, such rule, regulation, or interpretation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

12 U.S.C. § 2617(b). Section 3500.4(b) of Regulation X defines "rule, regulation, or interpretation" to include, among other things, all provisions of Regulation X "including appendices," 24 C.F.R. 3500.4(b), as well as any document published in the Federal Register as an "interpretation," "interpretive rule," "commentary" or "statement of policy." *Id.*

World's payment to Guerrero falls squarely within the safe harbor provided by section 19(b) of RESPA. Such payments have been recognized by the Department of Housing and Urban Development ("HUD") as being ordinary and legitimate business transactions, and are condoned by a number of different provisions and regulations. *See, e.g.*, Real Estate Settlement Procedures Act (RESPA) Statement of Policy, 1999-1, 64 FR 10080 ("1999 Policy Statement"), p. 9. Moreover, Plaintiff does not and cannot claim that World had any knowledge of Guerrero's allegedly improper behavior or could have prevented it. This is the precise type of scenario in which HUD intended to protect lenders from liability.

**1.      World's Alleged Conduct Does Not Violate RESPA**

The sum total of Plaintiff's RESPA allegations are as follows: 1) World paid Guerrero an $8,840 commission [Cmplt., ¶ 42], and 2) Guerrero's services were not adequately performed and, therefore, had no value *to Plaintiff* [Cmplt., ¶ 43]. These allegations fall woefully

short of the facts necessary to state a cause of action under RESPA. Indeed, if Plaintiff's Complaint stated a cause of action against World, every lender would be subject to RESPA liability when they pay a commission to a mortgage broker and the broker simultaneously is alleged to have breached a fiduciary duty that they owe to the borrower. That is simply not the law.

Plaintiff's RESPA claim for relief fails for two similar, but independent, reasons. First, 12 USC Section 2607(c)(2) precludes Plaintiff's RESPA cause of action. It states that "Nothing in this section shall be construed as prohibiting…the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." Here, Plaintiff admits that World paid Guerrero a fee outside of closing in exchange for a benefit that Guerrero actually conferred to World – namely, preparing and submitting on Plaintiff's behalf Plaintiff's ultimately successful loan application to World. Cmplt., ¶¶ 14, 42. HUD specifically has stated that this type of assistance satisfies RESPA's requirements. *See* 1999 Policy Statement, p. 9; *see also*, Bjustrom v. Trust One Mortgage Corp., 322 F.3d 1201, 1203 (9th Cir. 2003)[5]. Plaintiff's admission that Guerrero prepared all aspects of Plaintiff's loan application undermines his conclusory allegation that Guerrero provided nothing of value to World.[6] In turn, therefore, his RESPA claim for relief necessarily fails.

Second, to state a RESPA violation, a plaintiff must plead facts sufficient to show that the broker received compensation for something <u>other than</u> "goods or facilities actually furnished or for services actually performed." HUD specifically recognizes that, in many cases, the value of work that a broker performs - even though the broker is the agent of the borrower - can inure to the lender rather than the borrower. <u>See</u> 1999 Policy Statement, p. 11[7]; <u>see also</u> <u>Bjustrom</u>, 322 F.3d at

---

[5] "Typically, the mortgage broker performs a variety of functions, providing legitimate goods, facilities and services, in order to 'package' loan applications for funding…Mortgage brokers are paid for this work."

[6] It is not relevant to this inquiry that Plaintiff asserts now that Guerrero falisfied the information on Plaintiff's application. In deciding to pay Guerrero a commission, World was entitled to assume at the time that Guerrero had prepared a truthful application.

[7] "The Department recognizes that some of the goods or facilities actually furnished or services actually performed by

1208 (holding that lender's payment of fee to broker outside of closing did not violate RESPA because the broker "did all the work 'packaging' the loan that would have been done by [the lender] if [the lender] had not used a mortgage broker"). Put simply, as long as a broker receives compensation reasonably related to work actually performed (whether the services inure to the benefit of the borrower or the lender), no RESPA violation exists. Id.; see also Haug v. Bank of America, N.A., 317 F.3d 832, 838 (8th Cir. 2003) ("Because the language of Section 8(b) unambiguously requires the giving or receiving of an unearned portion of a settlement fee, the district court's inquiry should have ended with the plain language of the statute.").

Here, Plaintiff's RESPA claim for relief fails because it rests entirely on Plaintiff's allegation that Guerrero's work on the loan application provided no value *to Plaintiff*. Plaintiff fails to allege (and indeed cannot allege) that the work that Guerrero did in this regard provided no value to World.[8] Cmplt. at ¶ 43.

### 2. Plaintiff Cannot Maintain A Private Cause Of Action Under RESPA

RESPA designates HUD as the Federal agency responsible for prescribing regulations and interpreting RESPA. 12 USC § 2612(a). To survive a motion to dismiss a RESPA claim for relief, a plaintiff must plead facts sufficient to show that he has standing to bring a private RESPA action. Under Section 8 of RESPA, implicated in the instant case, a plaintiff must plead that they have suffered damages as a result of an improper business referral [12 USC § 2607(a)] or fee-sharing arrangement [12 USC § 2607(b)]. See Carter v. Welles Bower Realty, Inc., 493 F. Supp. 2d 921 (N.D. Ohio, 2007) (holding realty and title companies were entitled to Rule 12 dismissal of action

---

the broker in originating the loan are 'for' the lender and other goods or facilities actually furnished or services actually performed are 'for' the borrower…All services, goods and facilities inure to the benefit of both the borrower and the lender in the sense that they make the loan transaction possible."

[8] Here, not only has Plaintiff failed to plead that the fee was unearned, but he has affirmatively pled the contrary – that the fees at issue *were* earned and that services were performed in connection with both fees. Indeed, Plaintiff concedes that Guerrero prepared Plaintiff's loan application [Cmplt., ¶ 14] and successfully secured a loan for Plaintiff [Cmplt., ¶ 40].

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

7
**Memorandum Of Points And Authorities In Support Of Motion For Judgment On The Pleadings**

filed by consumer who alleged illegal kickbacks in violation of RESPA because consumers did not meet injury-in-fact requirements for U.S. Const. Art. III standing as they did not allege any overcharge for services rendered); see also Mullinax v. Radian Guar., 311 F. Supp. 2d 474 (M.D. N.C. 2004) (holding that, in action by mortgagees against providers of mortgage insurance alleging RESPA violations, mortgagees lacked standing because mortgagees failed to allege they were overcharged by providers and, thus, had no private right of action under RESPA).

Here, Plaintiff does not and cannot plead that he was overcharged for any benefit that World received from Guerrero's work because World, not Plaintiff, paid the commission that Plaintiff purports to challenge. Thus, Plaintiff lacks standing to bring the RESPA claim he alleges.

**C.     Plaintiff Cannot State A Claim For Relief Under Civil Code Section 1632**

Plaintiff alleges that World violated Section 1632 by failing to provide Spanish copies of the promissory note and "*federally-mandated*" disclosures. Cmplt., ¶ 18 (emph. added). As outlined below, however, Plaintiff cannot state a cause of action against World under this statute for two independent reasons. First, Plaintiff's claim fails because Section 1632 does not apply to the Loan under the facts plead. Independently, HOLA preempts 1632 as Plaintiff would apply it here to a federally chartered savings bank.

**1.     Plaintiff Does Not State A Claim For Relief Under Section 1632**

California Civil Code Section 1632 requires that a plaintiff allege that he negotiated a contract primarily in one of five enumerated languages. See Cal. Civ. Code § 1632(b). Plaintiff does not and cannot make such an allegation here. To the contrary, he admits that his agent[9], Guerrero, submitted Plaintiff's loan application to World. See Cmplt. at ¶14. Therefore, Guerrero, not Plaintiff, communicated with World. There is no allegation that Guerrero negotiated anything

---

[9] Caselaw confirms that Guerrero acted as Plaintiff's agent in negotiating the terms with World. Wyatt v. Union Mortgage Co., 24 Cal. 3d 773 (1979) (holding that mortgage brokers act as the borrower's agent as a matter of law)

for, or even with, Plaintiff relative to the terms of the loan. Moreover, Plaintiff does not and cannot allege that any actual negotiations with World took place in Spanish.

Plaintiff does not and cannot state a cause of action under Section 1632.

**2.     HOLA Preempts Plaintiff's Section 1632 Claim**

Leaving aside that Plaintiff's Section 1632 claims fails in substance, it also fails because HOLA expressly preempts application of any state law, including Section 1632, that purports to – or is used in an attempt to - require a federally chartered bank provide any specific disclosure to a consumer in connection with a home loan. Therefore, HOLA preempts Section 1632 as Plaintiff would apply it to World because Plaintiff is arguing that the statute requires World to use a specific method of disclosure of the terms of a home loan – one that is not required under federal law.

The paramount purpose of HOLA is to ensure the solvency of federal associations through a uniform national scheme of regulation so that the American public has access to means of home financing. See 12 C.F.R. §560.2; see also, Fidelity Federal Sav. & Loan Assn. v. De La Cuesta, 458 U.S. 141 (1982), 159-160. In furtherance of its stated goal of ensuring uniformity across all 50 states, Section 560.2 states that "OTS hereby occupies the *entire* field of lending regulation for federal savings associations." (Emphasis added.) The regulation goes on to state that the OTS intends to give associations "maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation" and that, except as provided in paragraph (c), federal savings associations may extend credit as authorized by federal law "without regard to state laws purporting to regulate or otherwise affect their credit activities." Id. "Thus, the federal regulation is intended to preempt *all* state laws purporting to regulate any aspect of the lending operations of a federally chartered savings association, whether or not OTS has adopted a regulation governing the precise subject of the state provision." Lopez v. World Savings and Loan Association, 105 Cal. App. 4th 729 (2003) (emphasis added).

HOLA provides a *non-exhaustive* list of the types of state laws that it intends to

9

**Memorandum Of Points And Authorities In Support Of Motion For Judgment On The Pleadings**

preempt. The list specifically includes all state laws relating to "[d]isclosures and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants…" 12 C.F.R. §560.2(b)(9); see also Rosenberg v. Washington Mutual Bank, F.A., 849 A.2d 566, 572 (N.J. Super. 2004). Section 1632 falls within this list of preempted statutory measures because Section 1632 specifically purports to regulate World's disclosures by requiring World to provide its Regulation Z form in foreign languages. See Cal. Civ. Code. §1632(e) and (e)(1).[10]

Even if Section 1632 were not deemed to relate specifically to the loan disclosures of a federal savings bank, HOLA still applies here because even broad state statutes face preemption when they are used in an effort to regulate the lending activities of a federally chartered financial institution operating under HOLA. In Silvas v. E*Trade Mortgage, 421 F. Supp. 2d at 1317, putative class action plaintiffs obtained loans from the defendant bank, but elected to rescind the mortgage transaction within the three days allotted for cancellation by TILA. The bank did not refund fees that the plaintiffs had paid to "lock-in" their interest rate. Id. The plaintiffs sued under the UCL and California Business and Professions Code Section 17500, alleging that the bank's advertisements and disclosures failed to clearly, conspicuously and accurately disclose that lock-in fees were non-refundable. Id. In granting the bank's demurrer, the court stated "Plaintiffs' UCL claims therefore attack Defendants' lending practices in two categories where OTS has explicitly indicated federal law occupies the field: (1) disclosure and advertising and (2) loan related fees." Id. at 1319. The court held that any an attempt to use a state statute to supplement a federal law that

---

[10] "Provision by a supervised financial organization of a translation of the disclosures required by Regulation M or **Regulation Z**, and, if applicable, Division 7 (commencing with Section 18000) or Division 9 (commencing with Section 22000) of the Financial Code in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated, prior to the execution of the contract or agreement, shall also be deemed in compliance with the requirements of subdivision (b) with regard to the original contract or agreement. "Regulation M" and "Regulation Z" mean any rule, regulation, or interpretation **promulgated by the Board of Governors of the Federal Reserve System** and any interpretation or approval issued by an official or employee duly authorized by the board to issue interpretations or approvals dealing with, respectively, consumer leasing or consumer lending, pursuant to the **Federal Truth in Lending Act**, as amended (15 U.S.C. Sec. 1601 et seq.)." (emph. added).

**Memorandum Of Points And Authorities In Support Of Motion For Judgment On The Pleadings**

explicitly occupies an entire field is impermissible. Id.; see also Rose v. Chase Bank USA, N.A., 2008 U.S. App. LEXIS 1240 (January 23, 2008, 9th Cir.) (holding that the National Bank Act preempted Cal. Bus. Prof. Code § 17200 as applied because plaintiffs sought to employ the "unfair" and "fraudulent" prong of § 17200 to supplement NBA's necessarily exclusive regulations). The Silvas court's analysis is controlling here, where Plaintiff is asserting that a state statute imposes a unique supplemental requirement in California for translation of loan disclosures made by a federally chartered savings bank.

Similarly, in Am. Bankers Ass'n v. Lockyer, 239 F. Supp 2d 1000 (E.D. Cal. 2003), plaintiffs sought recovery pursuant to California Civil Code Section 1748, which purported to impose various requirements on credit card companies. Among those requirements, the statute required credit card issuers to include a number of specific disclosure statements in a credit cardholder's billing statement. In finding preemption under HOLA, the Court stated, "[b]ecause section 1748.13's disclosure requirements mandate that specific information be included in cardholder's billing statements, it directly conflicts with OTS regulation §560.2(b)(9)." Id. at 1011.

Further, the Court in Lopez v. World Savings and Loan Association, 105 Cal. App. 4th 729 (2003), held that HOLA preempted a California state law regarding demand payoffs. The Court noted that preemption is appropriate whether or not the OTS has adopted a regulation governing the precise subject of the state provision. Id. at 738. In other words, there is no comfort for Plaintiff in the fact that the OTS has never said that a federal savings bank is not required to translate its loan agreements; the presence of general regulations regarding the subject of loan disclosures is sufficient to preclude California from mandating that it must do provide such translations. See id. Thus, the Lopez court observed that "it 'need not determine the full breadth of the term operations of a federal Association because there can be no dispute that such phrase extends at least to the regulation of mortgage escrow accounts *and mortgage disclosures.*'" Id. at 742, citing Wisconsin League of Financial Inst. v. Galecki, 707 F. supp. 401, 404 (W.D. Wisc. 1989) (emphasis added).

Returning to the present case, it is clear that HOLA preempts Section 1632 in the context of the Loan. It is undisputed that World operated as a federally chartered bank at all relevant

times. See attached Request for Judicial Notice ¶1. Therefore, HOLA preempts 1632 if it attempts to regulate World's disclosures. Accordingly, the court's analysis should end here: Section 1632 attempts to regulate – both by its wording and as it is being used in this action - the contents of federally chartered banks' disclosures. Therefore, it is preempted. Lopez, 105 Cal. App. 4th at 742; Silvas, 421 F. Supp. at 1319.

A stated purpose of HOLA is national uniformity. If HOLA did not preempt Section 1632, then laws governing disclosure requirements for loans from federally chartered banks would vary between California and other states. This is precisely the type of inconsistency HOLA was intended to prevent. HOLA therefore preempts Section 1632.

### III.     CONCLUSION

Plaintiff's Complaint fails to state a cause of action as to World. Plaintiff has not and cannot allege facts sufficient to support its RESPA cause of action and HOLA preempts Plaintiff's Civil Code Section 1632 cause of action. Therefore, the Court should dismiss Plaintiff's Complaint as against World.

DATED: May 29, 2008.

REED SMITH LLP

By    /s/ Keith D. Yandell
       Keith D. Yandell
       Attorneys for Wachovia Mortgage, FSB