1  DONALD F. SETH, ESQ.
   SBN 92318
2  290 B Street, Suite 205
   Santa Rosa, CA 95401
3  (707) 545-6370 Telephone
   (707) 545-9770 Facsimile
4  donaldfseth@gmail.com

5  Attorney for Plaintiff
   GONZALO PENA TORRES

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| GONZALO PENA TORRES, | ) | CASE NUMBER: CV 08-01775 WHA |
| | ) | |
| Plaintiff, | ) | (Formerly Sonoma County Superior Court |
| | ) | Case No. SCV 242546) |
| vs. | ) | |
| | ) | |
| WACHOVIA MORTGAGE | ) | OPPOSITION TO WACHOVIA |
| CORPORATION, et al., | ) | MORTGAGE CORPORATION'S MOTION |
| | ) | FOR JUDGMENT ON THE PLEADINGS |
| Defendants. | ) | |
| _____ | ) | DATE: July 3, 2008 |
| | | TIME: 8:00 a.m. |
| | | CTRM: 9, 19th Floor, San Francisco |
| | | |
| | | The Honorable William H. Alsup |
| | | |
| | | Complaint Filed: March 14, 2008 |

_____
OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA

**Table Of Contents**

**Page**

I.   Introduction...................................................................................................... 1

II.  Legal Standard For Judgment On The Pleadings........................................... 2

III. Mr. Pena's Complaint States a Claim for Relief Against World Savings for Violations of California Civil Code Section 1632...................................................... 3

   A.  Mr. Pena's Complaint States Sufficient Facts To Establish That The Promissory Note Was Governed By Section 1632 And The Negotiations With World's Agent That Culminated In The Loan All Took Place In Spanish... 3

      1.  Ms. Guerrero Acted As, And Was Alleged To Be, World's Agent.................................................................................................... 4

      2.  Mr. Pena Has Adequately Pleaded A Claim For World's Violation Of Section 1632......................................................................... 4

   B.  Mr. Pena's Section 1632 Claim Is Not Preempted By HOLA .......... 5

      1.  Mr. Pena's Section 1632 claim is not preempted by HOLA under 12 C.F.R. §560.2................................................................................ 6

      2.  HOLA Does Not Preempt Consumer Protection Laws Which Only Incidentally Affect Lending Regulations................................ 7

IV.  Mr. Pena's Complaint States A Valid Claim Under RESPA........................ 9

   A.  Mr. Pena's Complaint Adequately Pleads A RESPA Claim Against World Because He Received Nothing Of Valued From The Settlement Services Rendered In The Course Of Being Defrauded By World's Agent................10

   B.  World Claims It Cannot Be Liable To Mr. Pena under RESPA because it acted in good faith and is entitled to the safe harbor of Section 19(b) .........11

   C.  In California, Mr. Pena Has Standing To Maintain A Private Cause Of Action Under RESPA......................................................................................12

V.   CONCLUSION..............................................................................................13

# Table Of Authorities

## CASES

*Bjustrom v. Trust One Mortgage Corp.*,
    322 F.3d 1201 (9th Cir. 2003)..................................................................10

*Doleman v. Meiji Mutual Life Insurance Co.*,
    727 F.2d 1480 (9th Cir. 1984)..................................................................13

*Edwards v. The First American Corp.*, 517 F. Supp. 2d 1199 (C.D. Cal. 2007) ..12, 13

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*,
    887 F.2d 228 (9th Cir. 1989) ...................................................................2

*Gorman v. Wolpoff & Abramson, LLP*,
    435 F. Supp. 2d 1004 (N.D. Cal. 2006)....................................................12

*Gibson v. World Savings and Loan Assn.*,
    103 Cal.App.4th 1291 (2002).....................................................................7

*Hal Roach Studios, Inc., v. Richard Feiner & Co., Inc.*,
    896 F.2d 1542 (9th Cir. 1989)....................................................................2

*Hussey-Head v. World Savings And Loan Association*,
    111 Cal. App. 4th 773 (2003)....................................................................7

*McGlinchy v. Shell Chemical Co.*,
    845 F.2d 802 (9th Cir. 1988)......................................................................2

*Montoya v. McLeod*,
    176 Cal.App.3d 57 (1985)..........................................................................4

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003)......................................................................3

*Silvas v. E*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. Cal. 2008)............................................................6

*Strigliabotti v. Franklin Res., Inc.*,
    398 F. Supp. 2d 1094 (N.D. Cal. 2005).....................................................2

*Summit Media LLC v. City of Los Angeles*,
    530 F. Supp. 2d 1084 (C.D. Cal. 2008).....................................................2

*Walling v. Beverly Enterprises*,
    476 F.2d 393 (9th Cir. 1973)......................................................................2

*Wyatt v. Union Mortgage Co.*,
    24 Cal. 3d 773 (1979).................................................................................4

| | **STATUTES** |
|---|---|
| 12 U.S.C. §2601 | 9 |
| 12 U.S.C. §2602(1) | 9 |
| 12 U.S.C. §2602(3) | 9 |
| 12 U.S.C. §2607 | 9, 11, 13 |
| 12 U.S.C. §2607(b) | 9 |
| 12 U.S.C. §2607(c)(2) | 10, 11 |
| Federal Rule of Civil Procedure 12(b)(6) | 2 |
| Federal Rule of Civil Procedure 12(c) | 2, 13, 14 |
| Federal Rule of Civil Procedure 8(a)(2) | 3 |
| Federal Rule of Civil Procedure 8(d) | 3 |
| Home Owners' Loan Act (HOLA), 12 U.S.C. §§1461 | 3 |
| Real Estate Settlements Procedures Act (RESPA), 12 U.S.C. §2602(1) | 9 |
| California Civil Code §1632 | 2, 3, 4, 5, 6, 7, 8, 13 |
| California Civil Code §1632(a)(1) | 5 |
| California Civil Code §1632(b) | 5 |
| California Civil Code §1632(b)(2) | 4 |
| California Civil Code §1632(b)(4) | 4 |
| California Civil Code §1632(k) | 5 |
| California Civil Code §2317 | 4 |
| California Civil Code §2330 | 4 |
| California Civil Code §2332 | 4 |
| California Civil Code §2334 | 4 |

**RULES AND REGULATIONS**

| | |
|---|---|
| 12 C.F.R. §560.2(a) | 6 |
| 12 C.F.R. §560.2(b) | 6 |

_____
OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA

1   12 C.F.R. §560.2(c)........................................................................................................6

2   12 C.F.R. §560.2(c)(1)...................................................................................................6

3   24 C.F.R. §3500.14(c)................................................................................................9, 13

4   RESPA Statement of Policy, 1999-1, 64 FR 10080 ("1999 Policy Statement")
    *Real Estate Settlement Prcoedures Act Statement of Policy* 2001-1: *Clarification of Statement*
5   *of Policy 1999-1* ("2001 Statement of Policy")........................................................10

6                                           **TREATISES**

7   William W. Schwarzer, *et al.* Federal Civil Procedure Before Trial § 9:341
    Witkin, Summary of California Law, Contracts, § 124 (10th ed.)............................13

_____
OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA

**I.     Introduction**

Mr. Pena is a hardworking husband and father of four. He owns his own home and had saved $40,000. Mr. Pena has a seventh grade Mexican education and is primarily Spanish-speaking. He approached Magnolia Guerrero about acquiring some investment property using his savings as a deposit. All their conversations regarding possible real estate transactions were conducted in Spanish as Mr. Pena's spoken-English is rather rudimentary.

Mr. Pena's priority was protecting his family and the family home. Ms. Guerrero convinced Mr. Pena, over his better judgment, to take one hundred and eight thousand dollars ($108,000) of equity out of his house through a refinance with World Savings Bank FSB (now Wachovia Mortgage, FSB). Ms. Guerrero, without consulting with Mr. Pena, lied about his income and submitted fraudulent loan documents to World Savings to get him a negative amortization loan for which he was not qualified and he could not afford.  He was not presented a copy of the World Savings promissory note in Spanish before he signed it, despite the fact he cannot understand complex legal documents in English. Ms. Guerrero was acting as an agent for World Savings in arranging this loan for Mr. Pena. World Savings' paid Ms. Guerrero and her employer a commission of $8,400. Then, Ms. Guerrero convinced Mr. Pena to borrow $36,000 on a short term loan from an associate of hers, and then he had to get a home equity line to repay her. After all of those transactions, Mr. Pena finally had enough money for the down payment on the four unit investment property that was listed with Ms. Guerrero and which she wanted to sell him. She repeated the fraud in submitting loan documents to another bank which misstated Mr. Pena's income, without his knowledge, and for which he received another negative amortization loan that he could not afford.

Before Ms. Guerrero was finished with him, Mr. Pena had two skyrocketing negative amortization loans and a home equity line, none of which he could afford. Ms. Guerrero, acting as agent for these various lenders, arranged all of these financial transactions. It soon became apparent that Mr. Pena had been the victim of unscrupulous predatory lending practices. As a result, Mr. Pena is now at risk of losing all of his hard-earned savings and his home.

1    Mr. Pena filed suit to rescind the World Savings' loan, and for damages against the
2    agents and lender who took advantage of the language barrier and sophistication disparities to
3    lead him into this horrible predicament. World Savings now moves for judgment on the
4    pleadings claiming his complaint fails to state a claim against it for a violation of either
5    California Civil Code §1632 (requires a Spanish translation before he signed the promissory
6    note) or the Real Estate Settlements Procedures Act (RESPA) for the illegal kickback that
7    World Savings paid Ms. Guerrero and her employer.

## II.   Legal Standard For Judgment On The Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and a motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenge the legal sufficiency of the pleading under attack. They are nearly identical motions and are analyzed under the same standards. *Strigliabotti v. Franklin Res., Inc.,* 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005) citing William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:319. Both motions start with the premise that "[n]ot only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir. 1988). Even inferences reasonably drawn from the allegations in the pleading must be construed in favor of the responding party. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989)  Similarly,"any ambiguities must be resolved in favor of the pleading." *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir. 1973).

Judgment on the pleadings is proper only if, given all the alleged and inferred material facts, the moving party establishes that there is no material issue of fact and it is entitled to judgment as a matter of law. *Hal Roach Studios, Inc., v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1989). Unless it appears to a certainty that no relief is possible under any state of facts the plaintiff could prove in support of his claim, the motion must be denied. *Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008), citing

1  *Mostowy v .United States*, 966 F.2d 668, 672 (Fed. Cir. 1992).

2  To survive a challenge to the pleadings, the minimal notice pleading standards require
3  only "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed.
4  R. Civ. P. 8(a)(2); *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Finally, "[p]leadings
5  must be construed so as to do justice." Fed. R. Civ. P. 8(d)

6  **III.    Mr. Pena's Complaint States a Claim for Relief Against World Savings for**
7  **Violations of California Civil Code Section 1632**

9  World Savings (hereinafter "World") claims that Mr. Pena's cause of action for relief
10 under California Civil Code §1632 fails on two independent grounds: World claims the
11 complaint fails to plead sufficient facts to make this claim against it for the subject loan, and
12 also claims that this cause of action is preempted by the Home Owners' Loan Act, 12 U.S.C.
13 §§1461 (HOLA). Neither of these grounds is legally nor factually supported.
14 The complaint adequately pleads a cause of action for rescission as this loan transaction
15 is governed by Section 1632 and the negotiations leading up to the agreement were negotiated
16 in Spanish by World's agent. By its express terms, HOLA preemption does not purport to apply
17 to a broad reaching statute like Cal. Civil Code §1632 which applies generally to contract and
18 commercial law, and only peripherally impacts federal banking regulations.

19 **A.    Mr. Pena's Complaint States Sufficient Facts To Establish That The**
   **Promissory Note Was Governed By Section 1632 And The Negotiations**
20 **With World's Agent That Culminated In The Loan All Took Place In**
   **Spanish**
21

22 The allegations of the complaint, which must be taken as true in opposing a motion for
23 judgment on the pleadings, state that Mr. Pena is Spanish-speaking. Complaint ¶9. He talked
24 with Ms. Guerrero who was acting as an agent for World, Complaint ¶15, and Ms. Guerrero
25 solicited a refinance loan for his home with World. Complaint ¶¶13-14. Mr. Pena alleges that
26 all the discussions with Ms. Guerrero regarding this transaction were conducted in Spanish.
27 Complaint ¶12. Mr. Pena alleges that he "was to have received a Spanish language translation
28 of the World promissory note prior to its execution so that he could understand the terms of the

agreement." Complaint ¶36. No Spanish translation of World's promissory note was provided to Mr. Pena by World or its agents. Complaint ¶37. As a result of this violation of Section 1632, Mr. Pena alleges he is entitled to rescission of the World promissory note. Complaint ¶38.

### 1. Ms. Guerrero Acted As, And Was Alleged To Be, World's Agent

World attempts to evade liability for violating Section 1632 by claiming "Guerrero, not Plaintiff, communicated with World." World's Memo 8:21-25. World's argument ignores the fact that Mr. Pena's complaint specifically alleges that Ms. Guerrero was acting as World's agent and all of his discussions with her regarding the transactions were in Spanish. Complaint ¶¶12-15, 19. Ms. Guerrero was paid her commission by World for arranging the refinancing. Complaint ¶19. By virtue of Ms. Guerrero acting as World's agent, Mr. Pena's discussions with her in Spanish regarding the transactions are tantamount to discussions with World. See, e.g., Cal. Civil Code §2317 [ostensible agency created when principal allows a third person to believe agent acts for principal], §2330 [rights and liabilities of ostensible agent accrue to principal], §2332 [notice to either agent or principal is notice to both], and §2334 [principal is bound by acts of ostensible agent to persons acting in good faith].

The only authority cited by World in support of the proposition that mortgage brokers act as the borrower's agent as a matter of law, is silent regarding under what facts such brokers might be found to be dual agents. *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773 (1979). World's Memo 8:21- 9:4 and n. 9. Notwithstanding this silence, World argues as though they are mutually exclusive, although they are not. *See Montoya v. McLeod*, 176 Cal.App.3d 57, 65 (1985). There are sufficient allegations in the complaint to find that Ms. Guerrero was a dual agent, acting on behalf of the borrower and the lender.[1]

### 2. Mr. Pena Has Adequately Pleaded A Claim For World's Violation Of Section 1632

World asserts that Mr. Pena's claim must fail because he did not negotiate directly with

---

1. Given it was not raised in the moving papers, it appears undisputed that Mr. Pena's promissory note is an exception to Cal. Civil Code §1632(b)(2) under §1632(b)(4).

OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA                          4

1  them for the transaction at issue. This argument defies reason. Section 1632 provides for
2  rescission of any loan negotiated by a broker where the substantive elements of the statute have
3  been violated. Section 1632 would be a nullity if a mortgage lender could avoid rescission
4  based on the fact it personally did not act as the broker of the loan. In situations where brokers
5  are involved with the negotiations, the loan itself is subject to rescission if the statute has been
6  violated, regardless of the direct participation of the lender and regardless of any subsequent
7  assignment of the loan. *See* Cal. Civil Code §1632(k) [creating a remedy of rescission with
8  respect to "the contract or agreement" and noting that the remedy is applicable where the
9  agreement has been assigned.]. World's claim that it was not involved in the negotiations and
10 that this somehow protects the contract from rescission, despite the statutory violation, defies
11 all reason. The rescission that Mr. Pena seeks runs against the contract and is not confined to a
12 particular party. World's novel theory cannot prevail on a motion for judgment on the
13 pleadings.

**B.    Mr. Pena's Section 1632 Claim Is Not Preempted By HOLA**

15 California Civil Code Section 1632 provides that "any person engaged in a trade or
16 business" who negotiates a contract in Spanish (or one of the four other specified languages),
17 must deliver a translation of the contract in the language in which it was negotiated which
18 includes a translation of every term and condition in that contract. Cal. Civ. Code §1632(b). A
19 person aggrieved by a violation of the statute may rescind the offending contract even if the
20 contract has been assigned. Cal Civ. Code §1632(k).
21 World claims this statute, which "was enacted in 1976 to increase information and
22 protections for the state's sizeable and growing Spanish-speaking population", Section
23 1632(a)(1), is preempted by HOLA.
24 World's preemption argument relies upon its claim that World qualifies as a federally
25 chartered association "at all relevant times". See World Savings' Request for Judicial Notice
26 (filed May 29, 2008). The evidence fails to establish that fact "at all relevant times" because the
27 Certificates of Corporate Existence attached to Exhibit A merely state World's status as of July
28

---
OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA                           5

1   12, 2005 and April 21, 2006. There is no evidence of when the negotiations occurred, or when
2   the Promissory Note was executed. World relies upon an inference from those two dates that
3   this establishes World's status "at all relevant times" but the evidence provided fails to
4   establish that fact and for purposes of this motion, any inferences are in favor of Mr. Pena.
5   More importantly, even if World has adequately established that it is a federally chartered
6   association at all relevant times, World's flawed analysis does not support finding HOLA
7   preemption.

**1. Mr. Pena's Section 1632 claim is not preempted by HOLA under 12 C.F.R. §560.2**

The preemption analysis requires a review of 12 C.F.R. § 560.2(b) to see if Section 1632 is a type of state law contemplated as preempted in the list of illustrative examples, and if it is not, then whether 12 C.F.R. §560.2(c) exempts the law from the preemption of 12 C.F.R. § 560.2(a). *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005-1006, (9th Cir. Cal. 2008).

Cal. Civil Code §1632 requires that if a contract was negotiated in a listed foreign language, then a foreign language translation of the contract must be provided before it is executed. This law is not among the illustrative examples of § 560.2(b). Furthermore, it is a general consumer protection law affecting contract and commercial law that only incidentally affects the lending operations, which means that it is expressly exempted from preemption under 12 C.F.R. § 560.2(c)(1):

> (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
> (1) Contract and commercial law

Nothing in Section 1632 is inconsistent with 12 C.F.R. § 560.2(a) insofar as it does not purport to impact the content required of any disclosures, only that before someone signs a contract they must have the opportunity to read it in a language that they understand.

World has confused the relevant facts for this cause of action. Mr. Pena alleges the violation under Section 1632 was the failure to provide him with a "Spanish language

translation of the World promissory note prior to its execution so that he could understand the terms of the agreement." Complaint ¶36. World claims that "Plaintiff alleges that World violated section 1632 by failing to provide Spanish copies of the note and '*federally-mandated*' disclosures." World's Memo 8:13-14 [emphasis added by World]. The lack of Spanish translations of these disclosures is mentioned in the complaint as factual background, ¶18, but not as the basis for the Section 1632 violation. However, linking those disclosures to the Section 1632 claim is important to World as it struggles to create a superficial appeal to its HOLA preemption argument.  However, Section 1632 is silent as to requiring translated copies any such disclosures unless they are actually part of the contract.

### 2. HOLA Does Not Preempt Consumer Protection Laws Which Only Incidentally Affect Lending Regulations

World argues for sweeping preemption under HOLA, and this is not the first time. However, all of the authority that World relies upon in support of preemption addressed laws that directly affected lending regulations. California courts have repeatedly rejected World's broad HOLA preemption claims when World challenged laws that only incidentally affect lending regulations. *Gibson v. World Savings and Loan Assn.*, 103 Cal.App.4th 1291, 1302 (2002) [HOLA does not preempt a class action under the UCL when alleging that World overcharges borrowers for replacement hazard insurance and fraudulently misrepresents the costs because HOLA "does not purport to govern the manner in which World Savings or any federal savings association runs its business."]. <u>See also</u> *Hussey-Head v. World Savings And Loan Association*, 111 Cal. App. 4th 773, 782  (2003) [HOLA does not preempt state credit reporting statutes that require fair and accurate information be provided for credit reports because they were "predicated on the duties of a contracting party to comply with its contractual obligations," "on the duty not to misrepresent the material facts, and on the duty to refrain from unfair and deceptive business practices."]. Repeatedly, the courts have found such consumer protection laws are not inconsistent with HOLA since they do not directly affect the federal lending regulations themselves.

OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA                    7

Similarly, the consumer protections of Section 1632 are not preempted by federal banking regulations. Section 1632 is not preempted by HOLA because it relates to contract, commercial and tort law generally and is not aimed at regulating federal banks with respect to their lending practices. Rather, Section 1632 reflects a statutory codification of fundamental principles of contract law: enforceable contracts reflect mutual assent of the parties to the material terms of an agreement are not the product of unconscionable conduct or fraud. *See, e.g.*, Witkin, Summary of California Law, Contracts, § 124 (10th ed.) [noting that "[a] special problem arises where a person enters into a disadvantageous written contract because he or she is unable to read English."]. The statute does not purport to govern the lending activities of any organization and does not require the inclusion of any statement or information in a contract. On the contrary, the translation requirement is agnostic to the terms of the contract and merely requires that all terms in a covered contract be translated into the language in which the negotiation took place. At its core, Section 1632 is a statute which requires contracts to have only a modicum of fairness to be enforced; that goal is in harmony with the HOLA statutes and regulations that World invokes in support of its preemption argument. World's sweeping HOLA preemption argument that Section 1632 infringes on federal banking law is not well taken.

World concludes its preemption argument with the erroneous statement that "Section 1632 attempts to regulate – both by its wording and as it is being used in this action – the contents of federally chartered banks' disclosures. Therefore, it is preempted." World's Memo 12:2-5. What is actually at issue under Mr. Pena's Section 1632 action remains whether he was entitled to a copy of the contract in a language that he could read, before he was expected to sign it. Complaint ¶36. This basic consumer protection statute only incidentally affects the lending laws, only requiring that before they have a signed contract, the other side can read it. HOLA was never intended to preempt such a law and none of World's authority provides otherwise. Mr. Pena's complaint adequately pleads a claim under Section 1632 and World's HOLA preemption claim should be denied.

---

OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA                    8

### IV. Mr. Pena's Complaint States A Valid Claim Under RESPA

Mr. Pena alleges that the loan from World is a "federally related mortgage loan" under Real Estate Settlements Procedures Act (RESPA), 12 U.S.C. §2602(1) and that World's funding and origination of the loan are "settlement services" under 12 U.S.C. §2602(3). Complaint ¶¶40-41. Mr. Pena further alleges that Ms. Guerrero and her employer were paid a commission of $8,480 by World for submitting their fraudulent and false loan documents to World to obtain Mr. Pena's loan whose terms were so detrimental to Mr. Pena that it was of no value to him. Complaint ¶¶43-44. As such, defendants provided no goods or services to earn this commission. *Ibid.* Mr. Pena also alleges that World's payment of this commission to Ms. Guerrero and her employer, and their acceptance of it, despite the lack of their having rendered services of any value to Mr. Pena, violated RESPA's prohibition against providers of settlement services from paying referral fees and kickbacks. 12 U.S.C. §2607 and 24 C.F.R. §3500.14(c). Complaint ¶44. Mr. Pena seeks damages from the defendants for this RESPA violation. Complaint ¶45.

The Congressional findings from 12 U.S.C. §2601 regarding the purpose of RESPA may prove useful to this analysis:

> (a) The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country. …
> (b) It is the purpose of this Act to effect certain changes in the settlement process for residential real estate that will result--
>   (1) in more effective advance disclosure to home buyers and sellers of settlement costs;
>   (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;…

World's Memo 5:1-13. World claims it relied in good faith on 12 U.S.C. §2607(b) which under the usual sort of facts it allows a lender to pay a commission to someone like Ms. Guerrero as "payment for goods or facilities actually furnished or for services actually performed." World's Memo 6:6-10.

---

OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA                                           9

**A. Mr. Pena's Complaint Adequately Pleads A RESPA Claim Against World Because He Received Nothing Of Value From The Settlement Services Rendered In The Course Of Being Defrauded By World's Agent.**

A critical difference exists between how World and Mr. Pena see the value in the services provided by Ms. Guerrero. World states that it paid this commission "in exchange for **a benefit that Guerrero actually conferred to World**—namely preparing and submitting on Plaintiff's behalf Plaintiff's ultimately successful loan application to World. World's Memo 6: 10-12 [emphasis added]. Part of the difference in how the parties view the benefit conferred is that while the loan was approved, it was done based on falsely inflated income figures that created a loan relationship with World that certainly was not "successful" by any stretch of Mr. Pena's imagination. Complaint ¶¶12, 16-18. World provides no legal authority in support of its proposition that even if the benefit conferred upon World was fraudulently obtained through the acts of its agent, that still counts as benefit conferred under RESPA. World's Memo 6:6-17. Nor does World provide any authority to support its position that 12 U.S.C. §2607(c)(2) protection applies even when the "services actually performed" were acts of fraud by its agent and even though as a result the borrower has been set up to lose his family's home. *Id.*

Mr. Pena received no benefit by this fraud perpetrated against him. As a result of that "successful" loan he was forced into an untenable position regarding his ability to make house payments. Complaint ¶¶16-19. World, on the other hand, in theory stood to make a lot of money off of Mr. Pena, had he been able to make these payments that were 260% higher than what he had been paying. Complaint ¶¶16-19. But he could not afford those higher payments. Complaint ¶17. World has yet to provide any evidence of, nor legal support for the proposition that a fraudulently obtained loan that sets up the homeowner to lose his home is a benefit conferred on anyone for which a commission can legally be paid under RESPA.[2]

World cites HUD's RESPA Statement of Policy, 1999-1, 64 FR 10080 ("1999 Policy

---

2. In *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201 (9th Cir. 2003), the court held that yield spread premiums paid to a mortgage broker were not "kickbacks" which violated the Real Estate Settlement Procedures Act where the borrower was provided with useful goods and services, and made no showing that costs were excessive. World's reliance on this case is of little to no value since it is not on point.

OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA                                  10

Statement") in support of its position that the alleged payment of the commission to the agents is legal under RESPA, and is what HUD intended to protect. World's Memo 5:18-22. World fails to mention that in 2001, HUD clarified its interpretation of §§2607(a) and (b). *Real Estate Settlement Prcoedures Act Statement of Policy* 2001-1: *Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b),* 66 Fed. Reg. 53,052. (October 18,2001) (hereinafter "2001 Statement of Policy").  It established a two part test for determining the legality of certain lender payments to mortgage brokers under RESPA:

> (1) Whether goods or facilities were actually furnished or the services were actually performed for the compensation paid and;
> (2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

*Ibid.*

Worlds' argument fails to address the second part of the test. From the pleadings it would appear it would be difficult for World to make the point that the payments that they made to the agents ($8,480 in commissions) were reasonably related to the value of "services that were actually performed." In light of the allegations of fraud that took place to create this loan, any commission would be disproportionate to the value of the services. 2001 Statement of Policy, at 53,052.

### B.  World Claims It Cannot Be Liable To Mr. Pena under RESPA because it acted in good faith and is entitled to the safe harbor of Section 19(b)

World argues that Mr. Pena's pleading fails because World's conduct allegedly falls within the safe harbor, good faith defense, of Section 19(b) of RESPA, at 12 U.S.C §2607(c)(2) which protects conduct that is done in good faith conformity with any rule, regulation or interpretation thereof by HUD, even though it has been changed thereafter. World Memo 5:1-6:4. World argues this good faith, safe harbor defense protects its paying the commission to Ms. Guerrero and her employer, (which Mr. Pena alleges unequivocally was acquired only because Ms. Guerrero falsified his income on the loan documents that she prepared, Complaint ¶43) doing what they did to get Mr. Pena this loan from World. World further argues that Guerrero's falsifying the information on Mr. Pena's loan application is not relevant to this inquiry because

"World was entitled to assume at the time that Guererro had prepared a truthful application." World Memo, 6:26-27, n.6.

The above asserted position thinking by World ignores the agency allegations that Mr. Pena has made that states that Ms. Guerrero and her employer were agents of World. Complaint ¶¶ 8 & 15. Established agency law provides that as World's agent, anything that their agent (Ms. Guerrero or her employer) knew, is imputed to World, the principal. *Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1011 (N.D. Cal. 2006) Based on the agency allegation, no good faith defense can be stated upon the facts alleged herein, and World cites no authority to support a contrary conclusion.

Furthermore, World's payment of the commission to its agents was disproportional to the value of the services provided. In fact, that commission apparently served as the incentive to defraud Mr. Pena. No good faith safe harbor is deep enough to protect such conduct.

### C. In California, Mr. Pena Has Standing To Maintain A Private Cause Of Action Under RESPA.

The constitutional requirements of standing in a RESPA case were recently stated as requiring a plaintiff to "demonstrate (1) an injury (2) traceable to the defendant's actions that (3) can be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 167, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)." *Edwards v. The First American Corp.*, 517 F. Supp. 2d 1199, 1201 (C.D. Cal. 2007). Mr. Pena has alleged (1) that he has suffered an injury (his monthly mortgage payment skyrocketed from an affordable $1,840 to an unaffordable $4,104) thanks to the World loan. Complaint ¶¶12, 16, 18 & 42. He alleges (2) this injury is traceable to defendants' actions in fraudulently setting him up for a loan he cannot afford, due in part to the commission which World paid Ms. Guerrerro for her actions. Complaint ¶15, 42 - 45. Finally, Mr. Pena alleges that he received nothing of value for these settlement services for which Ms. Guerrero was compensated by World, in violation of RESPA, and that (3) he is entitled to civil penalties under RESPA as a result. Complaint ¶¶ 43-45. Based on the above, Mr. Pena has adequately pleaded standing under RESPA.

Disagreement exists among the Federal Courts regarding one particular requirement for

standing under RESPA. *Id.* at 1202, n.2.  World cites out of state District Court opinions which found standing to be lacking when the plaintiffs had not directly paid the overcharges or kickbacks at issue. World Memo 7:19-8:10. In rejecting that requirement for standing under RESPA, and those out of state decisions that supported it, *Edwards* held that a plaintiff "need not have suffered an overcharge to invoke the protection of RESPA" *Id*. at 1202-1204.  Unless there is a higher court's opinion which weighs in against him on this issue, Mr. Pena's claim under RESPA adequately pleads standing under RESPA.

World has brought this motion for judgment on the pleadings which requires the court to assume the truth of the factual allegations and inferences in Mr. Pena's complaint. Mr. Pena's pleading adequately states he has standing and has stated facts sufficient to constitute a claim under RESPA 12 U.S.C. §2607 and 24 C.F.R. §3500.14(c) for the civil penalties and attorneys that RESPA provides an aggrieved borrower.

## V.   CONCLUSION

For purposes of a motion for judgment on the pleadings, all factual allegations in the pleading under attack are accepted as true, and any inferences and ambiguities are resolved in favor of the responding party. The deferential notice pleading standards only require that plaintiff allege a plain and simple statement of the claims that entitle plaintiff to relief. Mr. Pena's pleading is more than sufficient to state two claims against World for violating Cal. Civil Code §1632 and RESPA's prohibition against illegal kickbacks.

If World believes that it has the evidence to support its defenses then it should consider a motion for summary judgment. In the meantime, its challenge to the sufficiency of the pleading itself should be denied as the claims are adequately pleaded and material issues remain. Fed.R.Civ.P. 12(c). World's motion must be denied if it fails to establish that World is not liable for the illegal practices perpetrated against the unsuspecting Mr. Pena, as a matter of law. *Doleman v. Meiji Mutual Life Insurance Co*., 727 F.2d 1480, 1482 (9th Cir. 1984).

Accordingly, Plaintiff respectfully requests that the Court deny World's motion in its entirety. However, if the Court finds any merit to World's motion, Plaintiff would request that

1 | the Court grant him leave to amend to state additional facts to clarify and bolster his claims. [3]

2 | Dated: June 12, 2008

3 | /s/ Donald F. Seth
DONALD F. SETH, ESQ.
4 | Attorney for Plaintiff

---

[3]. Courts have discretion to grant leave to amend under Rule 12(c). William W. Schwarzer, *et al*. Federal Civil Procedure Before Trial § 9:341

---

OPPOSITION TO WACHOVIA'S MOTION FOR
JUDGMENT ON THE PLEADINGS
CV 08-01775 WHA                           14